United States District Court
Southern District of Texas
**ENTERED**
July 06, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FURNITURE PROCUREMENT SERVICE, LLP,** § § § | | |
| Plaintiff, § § | | |
| VS. § § | CIVIL ACTION NO. 4:19-CV-03290 | |
| **NATIONAL CONTAINER GROUP, LLC,** § § § | | |
| Defendant. § | | |

## MEMORANDUM & ORDER

The Court held a hearing on Defendant's Motion for Summary Judgment (doc. 48) on Friday, June 10, 2022. At that hearing, the Court took the Motion under advisement. The Court now **GRANTS** Defendant's Motion for Summary Judgment and provides this Memorandum & Order to document its rulings and reasoning.

### I.    FACTUAL BACKGROUND

On or about May 28, 2018, a fire occurred at Defendant NCG's industrial facility located at the eastern end of a large warehouse located at 13131 Almeda Road in Houston, Texas 77045. (Doc. 48-3 at 2). Due to the efforts of over two hundred firefighters, the fire did not spread to Plaintiff's property, but Plaintiff alleges that its adjoining property sustained heat and smoke damage in excess of $4 million. (Doc. 1-1 at ¶ 4.4).

At its warehouse, NCG reconditions used propylene containers and barrels for resale. (Doc. 48-3 at 2). The containers are commonly called totes, and have a capacity of 250 gallons on average, though the totes can vary in size; the barrels hold 55 gallons. (*Id.*) Shipments of totes and

1

barrels are stored outdoors until ready to be processed. (*Id.*) Once inside, product identification tags are removed from the totes and barrels with a propane torch. (*Id.*) The totes are then loaded on a metal overhead rack that transports the totes to the eastern portion of the warehouse where they go through a cleaning process using only pressurized water, both hot and cold. (*Id.*) No soap or chemicals are used. (*Id.*) The barrels are transported on a separate conveyor undergoing the same process. (*Id.*) After reconditioning, the totes are stored four high along the south wall. (*Id.* at 2-3). The barrels are transported by conveyor into a brick enclosed room where they are shipped out. (*Id.* at 3). Containers that cannot be reconditioned are shredded. (*Id.*)

On the day of the fire, NCG's warehouse was closed and unoccupied since it was Memorial Day. (Doc. 53-2 at 3). NCG maintained no fire alarm or fire sprinkler system at its warehouse, even though NCG's maintenance manager (Mr. David Buyaki) reported that he had discovered at least one previous incendiary fire in a barrel upon arriving at the warehouse. (*Id.* at 3-4; doc. 53-1 at 46; doc. 48-3 at 6).

The fire was not discovered until a passerby on his way to a nearby golf range noticed smoke coming from the rear of NCG's warehouse. (*Id.* at 3-4; doc. 53-1 at 46). It took firefighters most of the day to extinguish the fire. (Doc. 53-4 at ¶7). There was limited water pressure at the warehouse, as NCG maintained no fire hydrants, so firefighters had to lay long hose in order to establish adequate water supply. (*Id.*) Indeed, a "fire cause analysis" created by EFI Global for Zurich North America (Defendant's insurer) concluded that "the lack of water hydrants on the property, length of hose lays from the street, low and/or no water pressure, and the time required to get crews and equipment on scene to develop an adequate water supply contributed to the intensity, fire spread, and extended burn time." (Doc. 48-3 at 7); *see id.* at 2.

While all investigators concluded that the origin of the fire was unascertainable because of severe damage to the structure, the Houston Arson Bureau (HAB), produced an incident report describing the nature of the fire's spread: "[a]n unknown ignition source . . . ignited the contents of the interior of the business located in the east side of the building. The ignited contents allowed the fire to spread to nearby combustibles . . ." (Doc. 51-2 at 4). Continuing, the HAB wrote in relevant part,

> The fire and smoke damage was observed to increase in severity from the east/south wall off set, to the east, with the heaviest fire and smoke damage being at the open loading dock area, at the stacked chemical containers, roughly 200 feet from south east corner of the building . . . It was observed that there [were] numerous plastic chemical containers with varying degrees of fire damage, from heavy damage in the form of melting and loss of material to showing little to no damage the farther west along the north wall of the building.
>
> . . . unknown chemical pools of liquid [were] observed burning on the north side of the building.

(*Id*. at 2, 5).

On June 25, 2019, Plaintiff filed suit against NCG alleging that NCG was negligent and grossly negligent in its warehouse maintenance and container storage. After discovery, NCG filed the present motion for summary judgment.

## II.   DISCUSSION

### A.  Legal Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed.R.Civ.P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." *Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001) (citations omitted). Evidence is construed in the light most favorable to the non-moving party. *Id.*

### B. Analysis

#### i. Negligence

To prevail on a negligence claim, a plaintiff must establish (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages that were (4) proximately caused by the breach. *Molina v. Home Depot USA, Inc.*, 20 F.4th 166, 169 (5th Cir. 2021); *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (citing *HIS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).

To show that NCG breached a duty owed to Plaintiff, Plaintiff must show NCG either "did something an ordinarily prudent person exercising ordinary care would not have done under the circumstances or failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 541 (5th Cir. 2005); *Butler v. Juno Therapeutics, Inc.*, 541 F. Supp. 3d 774 (S.D. Tex. 2021). The standard of care to be applied in a claim of negligence is a question of law. *Theriot v. United States*, 245 F.3d 388, 400 (5th Cir. 1998). The standard of care may be established by statutes or regulations, or by general principles of negligence law. *Targa Midstream Servs. Ltd. P'ship v. K-Sea Transp. Partners*, L.P., 527 F. Supp. 2d 598, 602 (S.D. Tex. 2007). When a statute or regulation "establishes a clear minimum standard of care," "the doctrine of negligence per se applies, [and] the general standard of care ... is replaced by [the] specific rule of conduct established in the statute or regulation." *Dougherty v. Santa Fe Marine, Inc.*, 698 F.2d 232, 234–35 (5th Cir. 1983).

Under Texas law, plaintiffs asserting a negligence claim are required to show that the injuries they suffered were proximately caused by defendant's breach of duty owed towards them. *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 433 (5th Cir. 2001); *Jones v. Halliburton Co.*, 791 F. Supp. 2d 567 (S.D. Tex. 2011). A plaintiff must show both foreseeability and cause in fact to establish proximate causation. *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021). Foreseeability requires that the negligent actor anticipated, or should have anticipated, the danger of the negligence created. *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 563 (S.D. Tex. 2016); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex. 1987).

Legal cause "is not established if the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible." *Allways Auto Group, Ltd. v. Walters*, 530 S.W.3d 147, 149 (Tex. 2017). Instead, legal cause requires the negligent act be a "substantial factor" in bringing about a plaintiff's harm. *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019). As explained by the Texas Supreme Court in *Union Pump Co. v. Allbritton*:

> [T]o be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent … The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.

898 S.W. 2d 773, 776 (Tex. 1995). A negligence plaintiff must prove only that the defendant's negligence was a substantial contributing factor in producing the injuries, but need not prove that the defendant's conduct was the sole cause of the injuries. *Bustamante v. Ponte*, 529 S.W.3d 447 (Tex. 2017).

5

Expert testimony is required when an issue involves matters beyond jurors' common understanding." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 815 (S.D. Tex. 2009). "Whether expert testimony is necessary to prove a matter or theory is a question of law." *Martinez v. Med. Depot, Inc.*, 434 F. Supp. 3d 537, 556 (S.D. Tex. 2020); *see Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 583 (Tex.2006) ("Proof other than expert testimony will constitute some evidence of causation only when a layperson's general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition. Expert testimony is required when an issue involves matters beyond jurors' common understanding.")

Plaintiff alleges that NCG was negligent in two ways: (1) by storing and stacking hundreds of large containers, most of which could hold up to 275 gallons of flammable liquid chemicals, in such a manner as to allow those containers to approach the ceiling of NCG's large warehouse; and (2) by failing to maintain fire alarms, sprinklers, a watchman, or fire hydrants at said warehouse. (Doc. 64 at ¶10). The Court addresses each theory of liability in turn, finding that expert testimony is needed to establish causation in each case.

*Container Storage*

Even assuming Plaintiff could establish duty and breach without expert testimony, expert testimony is needed to establish how, and to what extent, NCG's container-stacking configuration caused Plaintiff's injuries.

Laypeople are not usually in the business of storing and stacking 275-gallon containers, so "general experience and common understanding" will not suffice to guide factfinders in this matter. Certainly, a layperson could reasonably hypothesize that fewer containers stacked further

6

away from the ceiling might be less likely to cause a fire. But expert testimony that incorporates the specific circumstances of this case is necessary to raise such a layperson's hypothesis above the speculative level.

The Court finds that is unreasonable to expect a layperson to know—without expert testimony—exactly how far from the ceiling NCG should have stacked its containers, and how various stacking configurations could have caused damage to adjacent property. Therefore, since Plaintiff has not timely furnished expert testimony, it cannot prevail on its claim that NCG's negligent container-stacking proximately caused Plaintiff's damages.

### *Lack of Fire Precautions*

When it comes to NCG's failure to install fire hydrants, sprinklers, alarms, or watchmen, the Court again finds that expert testimony is needed to establish proximate causation between NCG's lack of fire precautions and the specific damage suffered by Plaintiff.

Certainly, a layperson knows from general experience that fire can be put out by water, and that if a fire is not quickly quenched, and is nourished by flammable materials, it can spread. A layperson can also draw from common understanding to hypothesize that fire alarms and watchmen can prevent a fire's rapid spread by bringing attention to the fact of a fire before the flames grow too large to manage. However, without expert testimony explaining the mechanics of the fire in this instance, a layperson cannot presume to know exactly how—and to what extent—NCG's lack of fire precautions proximately caused Plaintiff's injuries.

Therefore, Plaintiff cannot prevail on its claim that NCG's negligent failure to implement certain fire precautions proximately caused damage to Plaintiff's adjacent property.

### ii. Res Ipsa Loquitur

*Res ipsa loquitur,* meaning "the thing speaks for itself," is used in certain limited types of cases when the circumstances surrounding the accident constitute sufficient evidence of the defendant's negligence to support such a finding. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 250 (Tex. 1974); *Marathon Oil Co. v. Sterner,* 632 S.W.2d 571, 573 (Tex. 1982). *Res ipsa loquitur* is applicable only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Mobil Chem.,* 517 S.W.2d at 251; *Marathon Oil,* 632 S.W.2d at 573. In Texas, *res ipsa loquitur* is simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence. *Jones v. Tarrant Util. Co.,* 638 S.W.2d 862, 865 (Tex. 1982).

Plaintiff has not presented this Court with competent summary judgment evidence demonstrating that the "instrumentality causing the injury" was under the management and control of NCG. *See Pearson v. BP Prods. N. Am, Inc*., 449 F.App'x 389, 391 (5th Cir. 2011). On the contrary, Plaintiff acknowledges in its response that, "the exact instrumentality that ignited the fire is unknown." *See* doc 64 at ¶22. As well, the HAB and EFI Global both concluded that the origin of the fire was unknown, and that "human involvement"—that is, an arsonist—"cannot be ruled out." (Doc. 48-3 at 1, 8)."

Since Plaintiff cannot show that the instrumentality causing the injury was under the management of NCG, Plaintiff cannot establish *res ipsa loquitur* negligence.

### iii. Gross Negligence

Gross negligence consists of both objective and subjective elements. Plaintiff must first prove ordinary negligence. *See Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("[I]t is well established that a finding of ordinary negligence is a prerequisite to a finding of gross negligence.")

Plaintiff must then prove that (1) when viewed objectively from defendant's standpoint at the time of its occurrence, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). The Texas Supreme Court has interpreted the "extreme degree of risk" as not "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury." *See Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). In examining proof of the subjective component of gross negligence, courts focus on whether the actor knew about the peril caused by the actor's conduct but acted in a way that demonstrates the actor did not care about the consequences to others. *See Reeder v. Wood County Energy, LLC*, 39 S.W.3d 789, 793-95 (Tex. 2012). "An act or omission that is merely ineffective, thoughtless, careless, or not inordinately risky is not grossly negligent." *Id*. at 797. Only if the actor's conduct is unjustifiable and likely to cause serious harm can it be grossly negligent. *Id*.

Here, where Plaintiff has not established negligence, it has cannot establish gross negligence.

### III.   CONCLUSION

For the reasons set forth above and those stated on the record at the June 10, 2022 hearing, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 5th day of July, 2022.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE